**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BECKY MCVAY,                              )        3:13-cv-00359-HDM-WGC
                                         )
                Plaintiff,               )
                                         )        ORDER
vs.                                      )
                                         )
ALLIED WORLD ASSURANCE COMPANY,          )
INC., and YORK RISK SERVICES             )
GROUP, INC., *et al.*,                   )
                                         )
                Defendants.              )
_____ )

    Before the court are the defendants' motions to dismiss for
failure to state a claim (#15, #22).  Plaintiff has opposed the
motions (#16, #30, #33), and defendants have replied (#19, #35).

**Facts**

    In August 2009, plaintiff slipped and fell in a gas station
convenience store owned by the Fallon Tribal Development
Corporation ("FTDC"), which is an entity of the Fallon Paiute-
Shoshone Indian Tribe ("Tribe").[1]

_____

    [1] Plaintiff filed a complaint against FTDC in tribal court, which was
dismissed on sovereign immunity grounds.  Plaintiff subsequently filed a
motion to amend her complaint, which was heard by the tribal court in July
2012.  The result of that hearing is not clear from this record.

1

The Tribe is covered by an insurance policy issued by defendant Allied and administered by defendant York.  The "Sovereign Nation Commercial Insurance Policy" covers many things, including "all sums for which the 'Insured' shall be legally obligated to pay by reason of liability imposed upon the 'Insured' by law . . . for damages . . . and expenses . . . on account of 'personal injuries' and/or 'property damage' arising out of any 'occurrence' happening during the period of this policy." (Allied Mot. Dismiss Ex. A (Policy at 9)).

Plaintiff sent defendants a formal written demand on November 10, 2010, which was verbally denied on the grounds of the insured's sovereign immunity.  On June 22, 2011, defendants denied the claim in writing on the grounds that adequate warning existed and no other accidents had occurred on the premises.

Because she believes she cannot recover from the Tribe, plaintiff now seeks in this litigation to recover from its insurer Allied.

**Standard**

In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1150 n.2 (9th Cir. 2000).  The allegations of the complaint also must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  However, legal conclusions are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"Under the notice pleading standard of the Federal Rules,

2

plaintiffs are only required to give a 'short and plain statement' of their claims in the complaint." *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009) (quoting *Diaz v. Int'l Longshore & Warehouse Union, Local 13,* 474 F.3d 1202, 1205 (9th Cir. 2007)). While this rule "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, a complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading is insufficient if it offers only labels and conclusions, a formulaic recitation of the elements of a cause of action, or "naked assertions devoid of further factual enhancement." *Id.* (internal punctuation omitted).

Neither party disputes that the policy may be considered by this court in deciding the motions to dismiss. The parties also agree that Nevada law applies.

**Analysis**

Plaintiff's amended complaint (#12) alleges that: (1) FTDC was negligent; (2) plaintiff is entitled to recover for the injuries she suffered as a result of FTDC's negligence; (3) plaintiff was a third-party beneficiary of the contract between Allied and FTDC; (4) Allied breached the contract when it denied plaintiff's claim; and (5) York is liable to plaintiff as the third-party

1   administrator.   Plaintiff asserts both breach of contract and
2   breach of the implied covenant of good faith and fair dealing.

3       A. Breach of Contract

4       Defendants argue that as a prejudgment tort claimant and
5   nonparty to the contract of insurance, plaintiff cannot pursue a
6   direct action against them.

7       In Nevada, a "plaintiff suing a defendant for an alleged tort"
8   cannot "bring an action for declaratory judgment against the
9   defendant's insurance company regarding insurance coverage before
10  obtaining a judgment against the defendant."  *Knittle v.*
11  *Progressive Cas. Ins. Co.*, 908 P.2d 724, 726 (Nev. 1996).
12  Plaintiff argues *Knittle* is not controlling because she has no
13  active complaint against the tortfeasor and cannot pursue one due
14  to its claim of sovereign immunity.  While *Knittle* involved a
15  plaintiff who was pursuing a case against the tortfeasor but had
16  not yet obtained judgment, that fact is not dispositive of this
17  case.

18      First, *Knittle* cited with approval the following from *Farmers*
19  *Ins. Exch. v. Dist. Court*, 862 P.2d 944 (Col. 1993):

20          [N]o legally protected right or cognizable
            interest [is] at stake unless and until
21          [plaintiff] has established [the defendant's]
            liability.  Her rights are contingent on her
22          successful litigation of the personal injury
            suit.  When the rights of the plaintiff are
23          contingent on the happening of some event which
            cannot be forecast and which may never take
24          place, a court cannot provide discretionary
            relief.
25
26  Importantly, the court held that a plaintiff would have a claim
    against the insurer only after establishing the tortfeasor's
27
    liability – an event that "may never take place."  If true that
28

4

FTDC is insulated from liability by sovereign immunity, plaintiff will never be able to establish her claim against FTDC.  If FTDC is not protected by sovereign immunity, plaintiff must pursue a claim against FTDC before she can seek any relief from the insurer.  In either case, plaintiff's claims against the insurer cannot be maintained.

In addition, in Nevada, third parties cannot bring bad faith claims against a tortfeasor's insurance company because they have no contractual relationship with the insurer – regardless of whether there is a pending tort action against the tortfeasor.  *See Gunny v. Allstate Ins. Co.*, 830 P.2d 1335, 1336 (Nev. 1992); *see also Tweet v. Webster*, 610 F. Supp. 104, 105 (D. Nev. 1985) (noting that Nevada does not recognize a duty to negotiate in good faith running from an insurer to a third party).  Logically, then, a third-party claimant also may not sue the insurer for "breach of contract."  In fact, an unpublished Ninth Circuit opinion broadly held that in Nevada, "third-party claimants . . . who are injured by an insured lack standing to sue the insured party's insurance company directly."  *Kinzler v. Calvert Ins. Co.*, 255 Fed. App'x 116, 117 (9th Cir. 2007) (unpublished disposition) (citing *Gunny*, 830 P.2d at 1335-36).  In *Kinzler*, the plaintiff had actually obtained a judgment against the tortfeasor and was seeking an order requiring the tortfeasor's insurance to pay the judgment.  Even then, the Ninth Circuit held the plaintiff had no right under Nevada law to recover against the tortfeasor's insurer.

Plaintiff has not cited any case in which a person was allowed to directly proceed against their tortfeasor's insurer.  Nevertheless, she advances several unpersuasive arguments in

support of her claim.

First, plaintiff argues that public policy and common sense dictate that insurance companies pay for injuries suffered by victims of tribal torts.  She contends that because tribes have sovereign immunity, and because federal law requires tribes to have liability insurance, there would be no purpose of having liability insurance if the tribe's insurer was not required to pay for injuries caused by the tribe, its entities or its representatives.

Plaintiff bases her argument on 25 U.S.C. § 450f(c), which is part of the Indian Self-Determination and Education Assistance Act ("ISDEAA").  The ISDEAA allows tribes to take over some of the federal government's trust duties to them, such as law enforcement, health services, and schooling.  (Doc. #35 (Allied Reply Ex. A (Cohen's Handbook of Federal Indian Law, § 22.02[1], at 1386-87 (2012 ed.)))).  To do so, the tribes enter into "self-determination contracts," which are defined as contracts, grants, or cooperative agreements "between a tribal organization and the appropriate Secretary for the planning, conduct and administration of programs and services which are otherwise provided to Indian tribes and their members pursuant to Federal law."  25 U.S.C. § 450b(j).  Section 450f(c) requires the government to purchase liability insurance for all activities of tribes carrying out self-determination contracts.  This provision applies *only* to activities carried out as part of a self-determination contract.  *Id.* § 450f(c) ("[T]he Secretary shall be responsible for obtaining or providing liability insurance or equivalent coverage, on the most cost-effective basis, for Indian tribes, tribal organizations, and tribal contractors carrying out contracts, grant agreements and

cooperative agreements *pursuant to this subchapter*.") (emphasis added) (subchapter refers to the ISDEAA); *see also Demontiney v. United States*, 255 F.3d 801, 813 (9th Cir. 2001) ("Any effect of § 450f(c) is limited by the section to 'contracts . . . pursuant to this subchapter."). Further, the ISDEAA provides that "[n]othing in this subchapter shall be construed as . . . affecting, modifying, diminishing, or otherwise impairing the sovereign immunity from suit enjoyed by an Indian tribe." 25 U.S.C.A. § 450n(1). Claims based on tribal activities taken pursuant to a self-determination contract are treated as claims against the United States and must be pursued under the Federal Tort Claims Act. *Id.* § 450f(d); Pub. L. No. 101-512, § 314 (note to § 450f); Cohen's Handbook of Federal Indian Law, § 22.02[4][a], at 1391.

Defendants argues that the Tribe has a number of self-determination contracts and the policy covers those services as well as other aspects of the Tribe's operations that do not fall under the ISDEAA. Additionally, defendants assert that the activities of the FTDC are not funded by self-determination contracts because the government has no trust duties to provide business services to the tribe. Plaintiff has not alleged that the FTDC's conduct in this case is pursuant to a self-determination contract. However, she argues that the provision has a broader application. Plaintiff maintains that "legislative history" shows the purpose of § 450f is to provide an avenue of civil relief for injured claimants. The legislative history plaintiff cites is the "Indian Tribal Tort Claims and Risk Management Act of 1998," which is a note to § 450f. Pub. L. No. 105-277, § 101(e). While that act clearly shows a concern for victims of tribal torts, it

requires only a study of the liability insurance available to
tribes and annual reports to Congress containing "legislative
recommendations that the Secretary determines to . . . otherwise
achieve the purpose of providing relief to persons who are injured
as a result of official action of a tribal government." 25 U.S.C.
§ 450f note, § 704, Pub L. 105-277. Nothing in the note suggests
tribes must obtain liability coverage for all their activities.
The note orders only a study and no definitive relief for those
victims. Moreover, even if the tribe's activities in this case are
covered by § 450f, plaintiff's claim must be treated as one against
the United States and pursued under the FTCA.

Second, plaintiff argues that defendants improperly invoked
sovereign immunity under the insurance contract, and that
defendants should not be allowed to use such "fraudulent acts" to
avoid their liability to her. Plaintiff relies on *Albert H.
Wohlers v. Bartgis*, 969 P.2d 949 (Nev. 1998) for her position. She
seems to contend that *Wohlers* stands for the proposition that an
insurer may not use its own fraudulent acts to avoid liability for
bad faith. The "fraudulent act" plaintiff points to is defendants'
failure to timely obtain written approval from the Tribe before
invoking sovereign immunity as required by the insurance contract.
Plaintiff lacks standing to enforce the parties' contract because
she is not a party to it, nor is she (as will be seen shortly) an
insured or a specific intended beneficiary of the policy.
Moreover, defendants' alleged failure to strictly comply with
notification processes of their contract does not amount to a
fraudulent act.

Finally, plaintiff argues that she can pursue her claims

against defendants under the contract because she is either (1) a named insured or (2) a specific intended beneficiary of the contract.

### i. Named Insured

An insured may be able to sue an insurer for bad faith denial of her own benefits, even if she's not the contracting party. *See Bergerud v. Progressive Cas. Ins.*, 453 F. Supp. 2d 1241, 1249 (D. Nev. 2006) (Pro, J.).

The policy here defines insured to include:

> Any official, executive officer or director, trustee, member, partner, employee, intern or volunteer of the Named Insured while acting within the scope of his or her duties as such, and any person, organization, trustee or estate to whom the Named Insured is obligated by virtue of a written contract or oral agreement to provide insurance such as is afforded by this policy, but only in respect to liability for "personal injuries" or "property damage" caused, in whole or in part, by the Named Insured's acts or omissions or the acts or omissions of those acting on the Named Insured's behalf, in the performance of the Named Insured's ongoing operations or in connection with premises owned by or rented to the Named Insured.

(Allied Mot. Dismiss Ex. A (Policy at 8)).

Plaintiff argues that she is a person to whom the Tribe must provide insurance under a "written contract." The "written contract" she refers to is the "Indian Self-Determination Contract." As previously discussed, there has been no showing that any such contract exists that covers the tribe's activities in this case.

### ii. Specific Intended Beneficiary

"Whether an individual is an intended third-party beneficiary . . . depends on the parties' intent, 'gleaned from reading the

contract as a whole in light of the circumstances under which it was entered." *Canfora v. Coast Hotels & Casinos, Inc.*, 121 P.3d 599, 605 (Nev. 2005); *see also Robert Dillon Framing, Inc. v. Canyon Villas Apartment Corp.*, 2013 WL 3984885 (Nev. Apr. 17, 2013) (unpublished disposition) ("An intended third-party beneficiary must show that the parties to the contract clearly intended to benefit him. . . . Third-party beneficiary status requires more than the receipt of incidental benefits.").

Plaintiff has alleged no facts and has pointed to nothing in the contract itself showing that it was the parties' intent that victims of the insured be specific intended beneficiaries under the contract. Rather, she argues that she is a specific intended beneficiary because federal law requires tribes to have general liability insurance. For the reasons already discussed, that argument is without merit. The ISDEAA does not apply in this case. Plaintiff has not identified any other federal law requiring tribes to obtain general liability insurance for all their activities, or – more importantly – requiring those insurance companies to cover all claims based on those activities regardless of the Tribe's underlying sovereign immunity. Thus, plaintiff is not a specific intended beneficiary of the contract and is, at most, an "incidental beneficiary," because the Tribe, "like all parties purchasing [general liability insurance] coverage did so to protect itself against potential liability, rather than with any specific intent to benefit an unknown class of individuals that it might injure in the future." *Kinzler*, 255 Fed. App'x at 117. Incidental beneficiaries may not proceed directly against insurance companies for breach of contract or bad faith. *United Fire Ins. Co. v.*

*McClelland*, 780 P.2d 193, 197-98 (Nev. 1989).  Accordingly, plaintiff's breach of contract claim against both Allied and York should be dismissed.

     B. <u>Breach of the Covenant of Good Faith and Fair Dealing</u>

     In Nevada, "liability for bad faith is strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship.  When no contractual relationship exists, no recovery for bad faith is allowed." *McClelland*, 780 P.2d at 197.  As discussed above, third parties cannot bring bad faith claims against a tortfeasor's insurance company because they have no contractual relationship with the insurer.  *Gunny*, 830 P.2d at 1336; *Tweet*, 610 F. Supp. at 105. While a plaintiff might be able to sue an insurer for bad faith denial of her own benefits if she is an insured or specific intended beneficiary of the policy, *Bergerud*, 453 F. Supp. 2d at 1249; *Vignola v. Gilman*, 804 F. Supp. 2d 1072, 1076 (D. Nev. 2011) (Pro, J.), plaintiff is neither.  While a third party might be able to assert a bad faith claim against the tortfeasor's insurer where it "relied to its detriment on actions or representations made by the insurer," *Vignola*, 804 F. Supp. 2d at 1076, plaintiff has alleged no facts – in her complaint or her opposition – indicating she relied to her detriment on actions or representations of the defendants.  She argues only that she *subconsciously* relied on the gas station having liability insurance.  Accordingly, plaintiff has not established any basis for allowing her to proceed against the defendants on the theory of bad faith.

**II. Amendment**

     Plaintiff seeks leave to amend her complaint if the motion to

dismiss is granted.

Under Federal Rule of Civil Procedure 15(a)(2), "the court should freely give leave [to amend] when justice so requires." However, leave to amend is not to be granted automatically." *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013). The court "considers the following five factors to assess whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Id.* (internal punctuation omitted).

The court concludes that any such amendment would be futile. Accordingly, plaintiff's request for leave to amend her complaint is denied..

**Conclusion**

Because the plaintiff has not obtained a judgment against FTDC, she is not a named insured or specific intended beneficiary of the contract, and she has not alleged any acts or representations of the insurer that caused her to act in reliance on them, the defendants' motions to dismiss (#15, #22) are **GRANTED**. Plaintiff's request for leave to amend is **DENIED**, and this action is hereby **DISMISSED**. The clerk of the court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED: This 18th day of April, 2014.

_____
UNITED STATES DISTRICT JUDGE

12